IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LORRAINE C. SANDOVAL, o/b/o,
DAVID SANDOVAL,**

      **Plaintiff,**

vs.                                                        No.  01cv0930 DJS

**JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Sandoval's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 10]**, filed July 1, 2002.  The Commissioner of Social Security issued a final decision denying Sandoval's application for disability insurance benefits. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

Sandoval, now deceased,[1] filed his application for disability insurance benefits on March 24, 1999, alleging disability since September 15, 1998, due to diabetes mellitus and dizziness. Sandoval had a high school education and past relevant work as an electronics technician.  On March 27, 2000, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding

---

[1] Mr. Sandoval passed away from pancreatic cancer on November 16, 2000.  Lorraine C. Sandoval was substituted for her husband in the administrative proceedings.  Tr. 272.

that Sandoval's diabetes mellitus and dizziness were severe impairments (Tr. 16) but did not "meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." *Id.* Specifically, the ALJ reviewed Listings 1.01, 9.08 and 11.01. The ALJ further found Sandoval retained the residual functional capacity (RFC) to perform medium work. Tr. 18. As to his credibility, the ALJ found Sandoval's testimony was not wholly credible. Tr. 19. Sandoval filed a Request for Review of the decision by the Appeals Council. On July 27, 2001, the Appeals Council denied Sandoval's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.

Sandoval filed his Complaint for Reversal or Remand of the Commissioner's Final Decision on August 15, 2001. Pursuant to sentence 6, 42 U.S.C. § 405(g), on January 17, 2002, the Commissioner filed an "Agreed Motion to Remand" on the grounds that the claim file could not be located. On January 25, 2002, the Court entered its Order of Remand, remanding the matter to allow the Commissioner to locate or reconstruct the claim file. On February 21, 2002, the Commissioner filed her Motion to Reopen because the case file had been located. On February 26, 2002, the Court reopened this matter. Sandoval seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).[2]

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

---

[2] Sandoval filed a second application for benefits while this claim was pending in this Court. This second application was approved on August 17, 2000, on the basis of metastatic cancer to the liver, with an assigned disability onset date of May 1, 2000. Tr. 270, 271, 273.

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Sandoval makes the following arguments: (1) the ALJ's finding that he could perform medium work is not supported by substantial evidence and is legally erroneous; (2) the ALJ's determination that he could perform his past relevant work is not supported by substantial evidence and is legally erroneous; (3) the ALJ failed to properly assess medical opinion evidence; and (4) the ALJ's credibility determination is not supported by substantial evidence and is legally erroneous.

## A.  RFC Determination and Past relevant Work

At step four of the sequential evaluation process, the ALJ found Sandoval retained the RFC for medium work and therefore could perform his past relevant work as an electronic technician. Tr. 18.

## 1.  RFC Assessment Pursuant to SSR 96-8p

Medium work entails lifting no more than 50 pounds at a time with frequent lifting or carrying of up to 25 pounds. 20 C.F.R. § 404.1567(c); *see also* SSR 83-10, 1983 WL 31251 at *6. Social Security Ruling 83-10 defines medium work as:

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) <u>Flexibility of the knees as well as the torso is important for this activity</u>. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However there are relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, 1983 WL 31251 at *6 (emphasis added); *see also* SSR 83-14, 1983 WL 31254 at *5, *6. The regulations define full range as "All or substantially all occupations existing at an exertional level." SSR 83-10, 1983 WL 31251 at *6. "In jobs at the medium level of exertion, there is more likelihood than in light work that such factors as the ability to ascend or descend ladders and scaffolding, kneel, and crawl will be a part of the work requirement." SSR 83-14, 1983 WL 31254 at *5.

Sandoval contends the ALJ's RFC assessment does not comply with Social Security Ruling 96-8p. The Court agrees. Social Security Ruling 96-8p defines RFC as "an assessment of

an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *See* SSR 96-8p, 1996 WL 374184 at *1.  Social Security Ruling 96-8p instructs the ALJ to consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  *Id.*  Notably, "[a]t step four of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."  *Id.* at *3 (emphasis added).

In this case, the ALJ summarized some of the medical evidence and concluded, "Accordingly, the undersigned finds the claimant retains the following residual functional capacity: the ability to perform medium work."  Tr. 18.  The ALJ then continued "[b]ased upon the claimant's residual functional capacity, the Administrative Law Judge must determine whether the claimant can perform any of his past relevant work."  *Id.*  The ALJ then concluded that, based upon the RFC, Sandoval could return to his past relevant work as an electronic technician as that occupation was generally performed in the national economy. Tr. 18.  However, Social Security Ruling 96-8p makes clear that, "without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level."  *Id.*

6

Social Security Ruling 96-8p also requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." SSR 96-8p at *7. When symptoms, such as pain or dizziness in this case, are alleged, the RFC assessment must contain (1) a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms, and the adjudicator's personal observations, if appropriate; (2) include a resolution of any inconsistencies in the evidence as a whole; and (3) set forth a logical explanation of the effects of the symptoms on the individual's ability to work. *Id.* The RFC assessment must also include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. *Id.* The ALJ failed to do this analysis.

Finally, the "RFC assessment must always consider and address medical source opinions." *Id.* If the RFC assessment conflicts with an opinion from a medical source, Social Security Ruling 96-8p requires the ALJ to explain why the opinion was not adopted. *Id.* The Court has reviewed the record and the ALJ's decision, and finds that the ALJ did not follow Social Security Ruling 96-8p. The ALJ's decision is conclusory. Although the ALJ cited to Sandoval's treating physician's report (Tr. 17), he did not explain why he rejected the limitations imposed by Dr. Wagner.

**2.   Past Relevant Work**

In order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations.  See SSR 96-8p, SSR 82-62, 1982 WL 31386 at *4, see also *Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir.1996).  Here, the ALJ failed to make the detailed findings required by the regulations and rulings at step four. On remand, the ALJ must follow Social Security Ruling 96-8p in determining Sandoval's RFC and then apply the three phases of step four as articulated in *Winfrey  v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir.1996).

## B.  Medical Opinion Evidence

Sandoval contends the ALJ failed to properly assess the medical opinion evidence in this case.  Specifically, Sandoval claims the ALJ and the Appeals Council on review disregarded Dr. Wagner's opinion that he was restricted in various work-related activities, could not perform his relevant work and was disabled.  Additionally, Sandoval contends the Appeals Council failed to properly consider Dr. Cathcart's expert medical opinion.  Dr. Wagner is Sandoval's treating physician, and Dr. Cathcart is Sandoval's oncologist.

A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments.  *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).  Moreover, the opinions of specialists related to their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved.  See 20 C.F.R. § 404.1527(d)(5).

Unless good cause is shown to the contrary, the Commissioner must give substantial weight to the testimony of the claimant's treating physician.  If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth.  *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984).  "'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.'"  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)(quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).  Moreover, an ALJ may not substitute his own opinion for medical opinion.  See *Sisco* , 10 F.3d at 744.

In this case, the ALJ noted Dr. Wagner's report stating:

A report by M. Wagner, M.D. dated January 27, 1999 states that Mr. Sandoval's ongoing dizziness is of uncertain etiology and he is proscribed from engaging in tasks where loss of balance would place him in jeopardy in any way, such as driving climbing on ladders, standing on stools, or working in conditions of diminished light.  In addition, Dr. Wagner says that the claimant has degenerative arthritis of both knees which is mild.  Dr. Wagner stated that the claimant's diabetes is doing well with insulin.

Despite such warnings, the claimant climbed a ladder, fell, and sustained multiple rib fractures in July 1999.  However, this is not expected to disable him for a 12 month period.  I question his credibility regrading his limitations, since he was painting on a ten foot scaffold.

Tr. 17(citations to the record omitted).  The ALJ cited to Exhibit 8F to support his finding.  Exhibit 8F is a report from Dr. Wagner to the "University of California Retirement Plan Disability."  In his report, Dr. Wagner wrote the following response to the question, "Describe medical history as it relates to any disabling medical condition(s)."

> Mr. Sandoval's main underlying condition leading to his current situation is one of dizziness.  Mr. Sandoval's initial problem began in the spring of 1997, when he developed dizziness of uncertain etiology.  At that time he underwent consultation with a neurologist, ear, nose and throat physician as well as an otologist.  The cause of his dizziness remained obscure, it was postulated that he might have Mienere's disease, he was evaluated for vertebral basilar insufficiency, etc.  Ultimately, after approximately six months of evaluation, it was felt by the otologist he saw that he was suffering probably from disequilibrium.  Mr. Sandoval's condition remained static for four or five months, and then slowly improved, and resolved as of fall of 1997.  Subsequent to that, the patient did reasonably well with respect to the dizziness, he however developed a recurrence of this problem in September 1998, and the problem has continued up until the present time, he has reundergone diagnostic evaluation, specialty evaluation,, etc.  For the current situation, no definite etiology has been discovered for his dizziness, and he has failed to respond to therapeutic modalities including vestibular suppressants, diuretics, etc.  Currently, he is being treated with antidepressants medication, and is receiving acupuncture therapy, these modalities have also been without significant impact on his overall situation.
>
> The patient's other relevant medical problem is that of degenerative arthritis.  As a combination of the dizziness he was suffering in 1997 as well as degenerative arthritis in both knees the patient developed a bit of weakness in his lower extremities which has not really resolved with getting back to his usual activities of daily living.  Although this has not been severe, this combined with his sensation of dizziness and unsteadiness has prevented him from engaging in physical activities such as climbing on ladders, etc.

Tr. 133.  Dr. Wagner also reported that he had proscribed Sandoval from "driving a car, engaging in tasks where loss of balance would place him in jeopardy in any way.  Such activities include[d] climbing on ladders, standing on stools, working in conditions of diminished light, etc."  Tr. 134.

It appears from the ALJ's decision that he rejected Dr. Wagner's medical opinions due to his own credibility judgment. This was error. The record indicates that Sandoval was evaluated by several specialists and not one questioned Sandoval's complaints of dizziness. Tr. 92-132. In fact they all found he suffered from dizziness but were unable to find the cause. *See e.g.*, Tr. 115 (Impression: Dizziness); Tr. 107 (Chief Complaint: Dizziness; Diagnosis: Dysequilibrium). That Sandoval lost his balance while on a ladder would tend to confirm Dr. Wagner's medical opinion that Sandoval's dizziness precluded him from engaging in such an activity. In addition, the ALJ noted in his decision that the physicians who evaluated Sandoval noted no abnormal findings. However, Dr. Wagner noted in his report that Sandoval manifested the symptom of "unsteady gait." Tr. 134. Moreover, it is apparent from the record that there is no medical procedure or dipstick laboratory test for "diagnosing" dizziness or its severity. "[W]here no such conclusive tests exist, the failure to produce such test results is surely an improper basis for discrediting a claimant's uncontroverted testimony." *Pennington v. Chater*, 113 F.3d 1246, 1997 WL 297684, at *3 (10th Cir. June 5, 1997)(unpublished opinion)(citing *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 743-44 (10th Cir. 1993)(holding that ALJ improperly impeached a claimant's unrebutted testimony because of the lack of conclusive "dipstick" laboratory test for chronic fatigue syndrome). On remand, the ALJ shall consider Dr. Wagner's medical opinion and, if he chooses to reject it, he must set forth specific legitimate reasons for doing so.

Next, Sandoval contends the Appeals Council failed to properly consider Dr. Cathcart's expert medical opinion. Dr. Cathcart cared for Sandoval's from the time he was diagnosed with metastatic pancreatic cancer on August 3, 2000, until his death on November 16, 2000. Tr. 324. According to Dr. Cathcart, "at the time of his diagnosis the tumor was already involving internal

11

organs and hence very far advanced." *Id.* Dr. Cathcart also reported the tumor as having "a moderate to rapid growth rate." *Id.* Dr. Cathcart, opined that in her "best medical judgment [she] would estimate the onset of his disease to have been one year before his official diagnosis." *Id.* Dr Cathcart further noted that she had informally polled two of her colleagues, also oncologists, and they both concurred. *Id.*

The Appeals Council considered "the fact that since the date of the Administrative Law Judge's decision, Mr. Sandoval was found to be under a disability beginning May 1, 2000, based on the application filed on May 15, 2000; however, the Council found that this information [did] not warrant a change in the Administrative Law Judge's decision." Tr. 5. Sandoval contends that Dr. Cathcart's opinion sets the date of onset no later than August 1999. The Appeals Council had Dr. Cathcart's letter before it but failed to address it.

In determining the onset in disabilities of "nontraumatic origin," Social Security Ruling 83-20 requires the ALJ to consider an applicant's allegations, his work history, and the medical and other evidence. SSR 83-20, 1983 WL 31249 (Titles II and XVI: Onset of Disability). *Id.* The ALJ is also directed to call on the services of medical advisor when onset is to be inferred. *Id.* at*3. In terms of malignant neoplastic disease, Social Security Ruling 83-20 states:

> To establish onset of disability prior to the time a malignancy is first demonstrated to be inoperable or beyond control by other modes of therapy (and where prior evidence is nonexistent) requires a medical judgment by a physician. (At the hearing level, the ALJ should obtain an expert opinion from a medical source.) This judgment is based on medically reported symptoms, the type and location of the specific malignancy, and extent of involvement when first demonstrated.

*Id.* at *4. The Court finds that the Commissioner's onset date determination is not supported by substantial evidence and is contrary to law. On remand, the ALJ shall consider Dr. Cathcart's

expert medical opinion pursuant to Social Security Ruling 83-20.  The ALJ shall also obtain expert testimony in determining the onset of disability.

## C.  Credibility Determination

Sandoval contends the ALJ's credibility determination is not supported by substantial evidence and is contrary to law.  The Court agrees.  Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  Failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact or the truthfulness of subjective symptoms and complaints requires reversal and remand.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

In this case, the ALJ made two observations in his decision regarding Sandoval's credibility.  First, the ALJ noted "I question his credibility regarding his limitations, since he was painting on a ten foot scaffold."  Tr. 17.  Second, the ALJ found "The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision."  Tr.  19.  The ALJ failed to link his credibility determination to substantial evidence and is conclusory.  On remand, the ALJ shall reconsider his credibility determination and link it to substantial evidence.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 10]**, filed July 1, 2002, is granted.  This matter is

13

remanded to allow the ALJ to (1) redetermine Sandoval's RFC pursuant to Social Security Ruling 96-8p and *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); (2) reconsider Dr. Wagner's medical opinion and, if he rejects it, set forth specific legitimate reasons for doing so; (3) consider Dr. Cathcart's expert medical opinion pursuant to Social Security Ruling 83-20 and also obtain expert testimony in determining the onset of disability; and (4) reconsider his credibility determination and link it to substantial evidence.

      A judgment in accordance with this Memorandum Opinion and Order will be entered.

 

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**